UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEVEN SPAVONE,                         :
                                        :
                       **Plaintiff,**  :
                                        :      04 Civ. 8136 (HB)
     – against –                      :
                                        :
                                        :      <u>**OPINION & ORDER**</u>
CITY OF NEW YORK, N.Y.C. DEP'T          :
OF CORRECTIONS,                         :
                                        :
                       **Defendant.** :
------------------------------------------------------------X

**Hon. Harold Baer, Jr., District Judge[*]:**

      Defendant City of New York moves to dismiss on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or alternatively, for summary judgment pursuant to Rule 56. <u>Pro se</u> Plaintiff Steven Spavone's Complaint alleges Defendant is liable under 42 U.S.C. § 1983 for religious discrimination and violations of the Equal Protection Clause. For the following reasons, Defendant's motion, construed as one for summary judgment, is GRANTED.

**I.    FACTUAL BACKGROUND**

      During the months of July and August of 2003, Plaintiff was incarcerated at Rikers Island. (Am. Compl. at 1.) Pursuant to the policies of the New York City Department of Corrections ("DOC"), Plaintiff registered as a Catholic, which permitted him to participate in all of the designated Catholic services, but not the activities of other religions. (Am. Compl. at 2.)

      Plaintiff filed a grievance with the Inmate Grievance Resolution Committee and claimed he was kept from practicing his religion because Catholics did not have any scheduled bible study and he was not allowed to attend the Protestant Bible study sessions. Plaintiff's grievance was denied and he was informed that he could only attend activities of his designated religion, but if he wanted to partake in the Protestant Bible

---

[*] Anna Fontana, a fall 2005 intern in my Chambers, and currently a third-year law student at St. John's University School of Law, provided substantial assistance in the research and drafting of this Opinion.

1

study, he could change his affiliation to Protestant. The Catholic chaplain also agreed to meet with Plaintiff up to three times a week so that Plaintiff could study the bible.

Plaintiff filed a Complaint in this Court on September 10, 2003 and on December 10, 2004 he filed an Amended Complaint. He seeks damages in the amount of $719,000 for discrimination brought about by Defendant's denial of his rights to exercise his religion.

## II. LEGAL STANDARD

A court shall convert a motion for judgment on the pleadings into a motion for summary judgment under Rule 56 when matters outside the pleadings are presented and not excluded by the court, as long as the parties are given reasonable opportunity to present matters relevant to the motion. Fed. R. Civ. Pro. 12(c) (2005). This Court notified the parties at a Pre-Trial Conference on October 31, 2005 that it would construe the motion as one for summary judgment and provided the parties opportunity to submit additional material.

Under Rule 56(c), summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Pro. 56(e). However, a showing of *any* disputed issue is not enough—the issue must be a material one that would affect the outcome of the trial and backed by evidence that would allow "a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Even though a pro se plaintiff is generally afforded more liberty in his pleadings, he must still come forward with evidence of specific facts that refutes the defendant's evidence in its motion for summary judgment. See Jermosen v. Coughlin, 877 F. Supp. 864, 867 (S.D.N.Y. 1995).

## III. DISCUSSION

Plaintiff asserts that Defendant violated his civil rights, as guaranteed by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc

(2005), and the Equal Protection Clause of the Fourteenth Amendment and should be liable under 42 U.S.C. § 1983, which provides that any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 (2005). In order to establish a claim against a municipality under section 1983, a plaintiff must show that the municipality's custom or policy caused the deprivation of a constitutional right. See Davis v. City of New York, 2003 U.S. App. LEXIS 19650, at *4 (2d Cir. Sept. 22, 2003).

The policy in question here is the DOC Directive on Congregate Religious Services ("DOC Directive"). The policy is designed to allow inmates to practice their religious beliefs, but designates the manner in which it should be done, in order to keep the institution operating in an efficient, safe, and orderly fashion. (Ans. Exh. "A" at I. and III.) It states that:

> Inmates shall have the unrestricted right to hold any religious belief and to be a member of any religious group or organization . . . [and are] permitted to exercise their religious beliefs in any manner, provided that the exercising of such religious beliefs does not present clear and present danger to the safety and security of the institution or would disrupt the orderly administration of the institution.

(Ans. Exh. "A" at III.C. & III.D.) An inmate is first asked to identify his religious preference during the admissions process upon arrival at the institution. If he chooses a religious affiliation, he is only permitted to attend the religious services and activities of that particular religion. (Ans. Exh. "A" at VI.C.) The Second Circuit has found registration of an inmate's religion to be "at most, a slight burden on an inmate's right to religious freedom" and holding it necessary to promote "legitimate penological objectives." Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1096–97 (2d Cir. 1997). At any time, an inmate is permitted to change his religious affiliation if he so chooses, in accordance with a simple procedure outlined in the DOC Directive. A schedule of the various services for each religion is posted and the inmates are allowed to attend all

3

services and activities for their affiliated religion, barring any specific acts on their part indicating they pose a serious and immediate threat.

## A. Exhaustion of Administrative Remedies

Before a plaintiff can bring this action in federal court, the Prison Litigation Reform Act calls for a prisoner to exhaust all available administrative remedies. 42 U.S.C. § 1997e(a) (2005). The parties disagree as to whether Plaintiff ever requested a formal hearing, which would have been the next administrative step after rejection of the informal resolution. Regardless of any factual dispute, Plaintiff's claim cannot stand because there has been no violation of his rights, either constitutional or statutory.

## B. Violation of Plaintiff's Right to Exercise Religion under RLUIPA

Even though Plaintiff does not specifically allege a violation of RLUIPA, his arguments are such that his claim should be analyzed under this statute. Institutionalized persons who allege an infringement of their rights to exercise religious beliefs can bring an action under RLUIPA, which provides that "[n]o government shall impose . . . a substantial burden on the exercise of [religion of an institutionalized] person" unless the government shows that it is being done "in furtherance of a compelling governmental interest" and the method chosen "is the least restrictive means" of doing so. 42 U.S.C. § 2000cc(1) (2005). The statute not only covers federal institutions, but also applies to state and local jails that receive federal funding. Id. at § 2000cc(2).

Plaintiff has not suffered a substantial burden on the exercise of his religion because the DOC would not let him participate in another religion's bible study. Plaintiff registered as a Catholic upon admission and he was allowed to attend all Catholic services offered at Rikers Island. Catholics were entitled to Pastoral Counseling on Wednesdays and Mass on Saturdays. (Pl.'s Resp. Exh. "B".) When Plaintiff complained that he should be allowed to attend Protestant Bible study, the Catholic chaplain offered to meet with him three days a week for Bible study sessions lasting one and one-half hours. (Pl.'s Resp. Exh. "E".) By Plaintiff's own admission, he took advantage of this meeting time with the chaplain for bible study. Plaintiff was not substantially burdened by the DOC's policy of only permitting inmates to participate in one religion. Rather, he

4

was afforded opportunity for bible study in addition to the established Catholic activities, the only difference being that it was not with the Protestant group. This is, at best, an inconvenience, but does not rise to the level of a burden on Plaintiff.

Courts have acknowledged that legitimate security concerns are to be considered a compelling governmental interest. The Supreme Court in Cutter v. Wilkinson stated, "[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety." 2005 U.S. LEXIS 4346, at *23–24 (May 31, 2005). The DOC has a compelling interest in trying to restrict movement of inmates to maintain proper order at Rikers Island. To do so, inmates are required to register their religious affiliations, so that the DOC could plan ahead and know how many inmates would be moving for religious observances throughout a given day. This Court has previously found that the DOC policy of registration is necessary to predict the movement of inmates and to minimize the possibility of danger and the exchange of contraband. See Muhammad v. City of New York Dep't of Corr., 904 F. Supp. 161, 180 (S.D.N.Y. 1995) (detailing the specific conditions at Rikers Island and how they relate to maintaining safety and order). Allowing inmates to participate in only one religion, chosen by them, is the least restrictive means of achieving the compelling interest described above.

## C. Violations of the Equal Protection Clause of the Fourteenth Amendment

The Equal Protection Clause of the Fourteenth Amendment states that no person shall be denied "the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Essentially, it prohibits the disparate treatment of a plaintiff from similarly situated individuals. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). To allege a violation under the Equal Protection Clause, a plaintiff must "prove purposeful discrimination directed at an identifiable or suspect class." Hart v. Westchester County Dep't of Soc. Servs., 160 F. Supp. 2d 570, 578 (S.D.N.Y. 2001).

In this case, Plaintiff fails to allege any specific facts to show that he, as a Catholic, was deliberately treated differently on the basis of his religion from inmates of the other religious affiliations. Instead, he claims that he was denied access to an activity

that is granted to all other similarly situated Christians. (Pl.'s Resp. at 6.) But Plaintiff offers no evidence that other Christians who registered as Catholic or Protestant were allowed to participate in activities of the other religion. The Catholic inmates, along with all other inmates, were only allowed to attend the services and activities of their own religion. As such there are insufficient facts to sustain an Equal Protection challenge.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is instructed to close any open motions and remove this case from the docket.

**SO ORDERED.**
New York, New York
December ____, 2005

U.S.D.J.